White *vs.* Morrison *et al.*

JOHN WHITE, appellant, *vs.* JAMES D. MORRISON *et ux.*, and JOSEPH B. V. BUTLER, appellees.

*Appeal from Pike.*

The statute which authorizes evidence in chancery cases to be given orally, was only designed to change the mode of taking testimony, and not to dispense with the necessity of having the evidence in the record.

When this statute is acted on, the testimony of the witnesses, or the facts proved by them, ought still to appear in the record.

The evidence, or the facts proved by it, may be stated in the decree, in a bill of exceptions, in a certificate of the judge, or in a master's report. It is the duty of the Circuit Court, to see that the evidence is incorporated into the record in some one of these ways. It will not be presumed, that any other proof was made, under this statute, than what thus appears in the record.

A general reference to exhibits in a decree, must be understood as including only those appearing in the record.

A complainant cannot allege one case in his bill, and make proof of a different one. His allegations and proofs must correspond.

Special replications in chancery are now disused. A general replication only puts in issue the truth and sufficiency of the matters stated in the bill and answer. A party may, in an original bill, anticipate a defence, and allege any matter necessary to explain or avoid it; or, omitting to do so, on the coming in of the answer, he may introduce the new matter into the case by an amendment of the bill.

This was a bill filed in the Pike Circuit Court, in February, 1848, by appellant, against the appellees, to obtain a decree for the foreclosure of certain mortgaged premises. The mortgage was executed to appellant on 26th March, 1842, and acknowledged by Morrison and wife on the same day. After the execution of the mortgage, Morrison conveyed the mortgaged premises to Butler, the other appellee, on the 30th day of June, 1843. Butler signed the following statement, written upon said mortgage:

"*June* 30, 1843.—I do hereby acknowledge that I was well apprised of the execution of this mortgage deed being in the hands of John White of Scott county, previous to the purchase which I made of the same property from James D. Morrison, known and described in this mortgage, also in my deed, known as lots number thirty-six and thirty-seven, in Peters' addition to the town of Pittsfield; and I admit the same to be put on record, and to the preference of my deed.

"JOSEPH B. V. BUTLER."

The mortgage was conditioned for the payment of a note of Morrison to White, dated 26th March, 1842, due in one year, for two hundred and forty-five dollars, with twelve per cent. interest. The mortgage was recorded in Pike county, the day of the

46

date of Butler's agreement. Morrison and wife having failed to answer, the bill was taken for confessed as to them. Butler filed an answer to the bill, in which he admits the execution of the note and mortgage, and the conveyance of the mortgaged premises to himself, as stated in the bill. Admits that he purchased with knowledge of the mortgage, and that he signed the foregoing agreement, written upon the back of it; but denies any promise to pay the mortgage. The answer further states, that at September term, 1840, of the Pike Circuit Court, one James H. Johnson recovered a judgment against Morrison for two hundred and fifty-nine dollars and seventy cents; that on the 8th November, 1845, an execution was issued on said judgment, which was levied on said premises, and sold by the sheriff to Jackson Grimshaw, who assigned the certificate of purchase to Butler, the respondent; that by reason thereof, the sheriff, in pursuance of said sale and assignment, gave Butler a deed for the said premises. The answer further denies a promise to withhold the purchase money from Morrison, or that the purchase, under the execution against Morrison, was upon any condition that the rights of the complainant should not be prejudiced.

The cause was heard, on the bill, answer of Butler, replication and depositions, before Minshall, Judge, at September term, 1849, who entered a decree dismissing the bill. The complainant prayed this appeal, and assigned for error the dismissal of the bill.

J. Grimshaw, for appellant:

1. Butler's answer not being sworn to, has no greater effect as evidence than the bill. Rev. Stat. 1845, 96, sec. 21. It performs the office of pleading alone, and assists in making up the issues. 4 Scam., 20, Nillis *et al.*, *vs.* Henderson. Replication being filed, Butler was bound to prove any facts set up by him in his answer, to avoid relief asked for in the bill. Jameson *vs.* Conway, 5 Gilman, 229. Answer of Butler may be used by complainant, to show what the answer admits; but so far as it sets up new matter, in avoidance of White's demand, such new matter must be sustained by proof. Hart *vs.* Ten Eyck, 2 Johns. Ch., 90, and note. Allegations in bill material to relief were admitted by answer. Butler sets up by answer, an assignment to him of a certificate of purchase, on a sale of the mort-

gaged property on execution, issued on judgment older than mortgage. He files a copy of sheriff's deed, as exhibit, with answer, but does not say he paid for it. Butler was bound to make strict proof of this new matter in defence, by producing judgment, execution and sheriff's deed : the original, not a copy. Record shows nothing but this copy. Jameson *vs.* Conway, 5 Gilman, 231.

2. Admitting, for sake of argument, that there is some testimony that Butler has acquired a sheriff's deed under Johnson's judgment, it should avail him nothing in this cause. On the principle decided in Smith *vs.* Brown, 5 Gilman, 311, Butler, by his agreement with Morrison, was not bound to pay any thing after 1st November, 1844, unless Morrison, before that time, paid off these liens. After that date he had means in his own hands, and had the right, by the agreement with Morrison, to pay them off himself. Any payment made to Morrison after November 1, 1844, was made in his own wrong. This title inured to benefit of White. Morrison paid the only consideration that was paid. Rev. Stat. 1845, 104, sec. 7 ; Frisby *vs.* Ballance, 2 Gilman, 145.

3. White, the mortgagee, before the sale under Johnson's judgment, had the legal title. Butler was a purchaser of Morrison's equity of redemption, prior to White's mortgage, and with express notice of the mortgage. In order to avail himself of this Johnson title, he must present himself in the attitude of a *bona fide* purchaser ; he must have purchased in good faith, without notice, for a valuable consideration, which has been actually paid. He must show that he would be hurt by this decree. He must show that in good faith he has acquired some paramount legal title, since June, 1843, when he signed the memorandum on the mortgage, and that he has actually paid for such title. Morrison having repaid to Butler all that Butler paid for this Johnson title, Butler stands precisely where he did when he signed the memorandum. Jewett *vs.* Palmer, 7 Johns. Ch., 67 ; Tourville *vs.* Naish, 3 Peere-Williams, 307 ; Murray *vs.* Finester, 2 Johns. Ch., 156; Nellwyn *vs.* Lee, 9 Vesey, jr., 32; Beekman *vs.* Frost, 18 Johns., 562; Howlett *vs.* Thompson, 1 Iredell's Ch., 375. The cases of Powell *et al. vs.* Jeffries, 4 Scam., 389 ; Lambert *vs.* Nanny, 2 Mumford, 196, are strongly in point.

WILLIAMS & LAWRENCE, for appellees :

1. The complainant is not entitled to relief, unless the proof supports the case made in his bill. McKay *vs.* Bissett, 5 Gilman, 501.

2. The defendant, Butler, was not disabled, by the fact of his having purchased from White, from also purchasing the property at the sheriff's sale on Johnson's judgment. He had the same liberty of purchasing at sheriff's sale as any other person; and the purchaser at that sale took a title relating back to the time when the lien of Johnson's judgment attached. Martin *vs.* Dryden, 1 Gilman, 187.

3. The cases cited by the counsel for the complainant relate to a purchase made by one person of another, with notice of an outstanding equity in a third person. In such cases, the purchaser of the legal title is made a trustee for the holder of the equity. But these are cases where the equity and the legal title come from the same person. No case can be found where the purchaser of the legal title is made a trustee for the holder of the equity, unless the equity and the legal title are derived from the same person, or unless there is some fraud in the acquisition of the legal title.

Opinion by TREAT, C. J. :

This decree cannot be affirmed. The case shows a clear right in the complainant to a foreclosure of his mortgage, unless the defendant, Butler, made full proof of his defence. He alleges in his answer, that he had acquired the legal title to the mortgaged premises, by virtue of a sale and sheriff's deed, founded on a judgment recovered against the mortgagor before the execution of the mortgage. The sheriff's deed, although referred to as an exhibit in the answer, does not appear to have been produced and proved. If introduced and proved as an exhibit, on the hearing, it would have been filed with the papers of the case, and copied into the transcript sent to this Court. Holdridge *vs.* Bailey, 4 Scammon, 124. But it is contended that the existence of the judgment and the proceedings under it, is admitted by the bill. Such is not the fact. The bill states that the defendant, Butler, pretends that he has purchased the premises, under a judgment older than the mortgage; and then charges

that it would be inequitable in him to set up the purchase to defeat the mortgage, inasmuch as he had agreed to pay off the mortgage. This statement does not dispense with proof of the allegations of the answer. It is not an admission that there was such a judgment, or that such proceedings were had under it. The bill anticipates a particular defence, without conceding it to be true. We are asked, however, to presume that proof of the defence was made orally at the hearing, under the provisions of the act of the 12th of February, 1849, which declares, "that hereafter, on the trial of any suit in chancery, the evidence on the part of either plaintiff or defendant may be given orally, under the same rules and regulations as evidence in cases at common law; provided, however, that depositions taken in pursuance of law may still be read in evidence, as if this act had not been passed." Acts of 1849, page 133. Previous to the passage of this act, the testimony in contested chancery cases, was taken down in writing in the form of depositions, except where the witnesses were examined orally before a master, and the facts proved by them reported to the Court, and when the proof of exhibits was made *viva voce* at the hearing. And the depositions, the master's report, and the exhibits were filed, and made part of the record of the case. McClay *vs.* Norris, 4 Gilman, 370. We are of the opinion that this act was only designed to change the mode of taking testimony, and not to dispense with the necessity of the testimony appearing in the record. The parties are permitted to produce their witnesses in open Court, and have them examined orally. The object was to avoid the inconvenience, expense and delay attending the preparation of a case for hearing, where the evidence must be taken by depositions. When this statute is acted on, the testimony of the witnesses, or the facts proved by them, ought still to appear in the record. It may be stated in the decree; in a bill of exceptions; in a certificate of the Judge, or in a master's report. We conceive it to be the duty of the Circuit Court to see that the testimony is incorporated in the record, in some one of these ways. This Court will not presume that any other proof was made than what is thus stated in the record. In this case, the decree recites that the cause was heard on the bill, answer, replication, exhibits and depositions. The record fails to show that

any proof was made of the sheriff's deed. The exhibits referred to in the decree must be understood as including only those appearing in the record. For this defect in the proof of the defendant, the decree must be reversed. Instead of a decree being entered in this Court, the cause will be remanded, that the parties may have an opportunity to present the whole case on the merits. It may not be improper to make some further suggestions respecting the case. It was insisted on the argument that the complainant was entitled to a decree of foreclosure, even if the allegations of the answer were true, inasmuch as he proved that the purchase under the judgment was made with the money of the mortgagor. If such was the fact, Butler cannot assert title under the sheriff's deed, to the prejudice of the mortgage, because, in equity, it was the purchase of the mortgagor, and inured to the benefit of the mortgagee. But the complainant has not made a case by his bill, that will authorize him to defeat the purchase on this ground. He seeks to avoid the purchase on the ground that Butler was personally liable for the payment of the mortgage. He cannot allege one cause for relief against the purchase, and make out his case by proof of a different one. His proof must correspond with the allegations he has made, and not be inconsistent therewith. He must stand or fall with the case made in his bill. McKay *vs.* Bissett, 5 Gilman, 499. Special replications in chancery are now disused. A general replication only puts in issue the truth and sufficiency of the matters stated in the bill and answer. If it is necessary for a complainant to put in issue any fact on his part, in avoidance of matters set up by the defendant, he must do it by proper charges in his bill. He may, in the original bill, anticipate the defence that will be made, and allege any matter necessary to explain or avoid it; or, omitting all reference to the defence, he may, on the coming in of the answer, introduce the new matter into the case, by an amendment to the bill. Story's Eq. Pl., sec. 878; Tarlton *vs.* Vietes, 1 Gilman, 470.

The decree of the Circuit Court will be reversed, with costs, and the cause remanded, with leave to the complainant to amend his bill.

*Decree reversed.*